UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-00038-RJC

| | |
|---|---|
| KEITH EUGENE MANN, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Keith Eugene Mann's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11); his Memorandum in Support, (Doc. No. 12); Nancy A. Berryhill's ("Defendant's or "Commissioner's") Motion for Summary Judgment, (Doc. No. 13), and her Memorandum in Support, (Doc. No. 14).

I. BACKGROUND

A. Procedural Background

Plaintiff seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On January 18, 2013, Plaintiff filed his application for a period of disability insurance benefits alleging an onset date of October 11, 2013. (Doc. Nos. 6

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

to 6-8: Administrative Record ("Tr.") at 186–94). Plaintiff's application was denied initially and upon consideration. (Tr. 78-114, 118-27, 131-138).

On June 18, 2015, a hearing was held in front of an Administrative Law Judge ("ALJ"). (Tr. 29–74). On August 14, 2015, ALJ Jenkins issued a decision finding Plaintiff not disabled. (Tr. 8–28). The Appeals Council denied review of the ALJ's decision on November 30, 2016, making the ALJ's opinion the final decision of Defendant. (Tr. 1–6). Plaintiff now appeals the ALJ's decision, requesting this Court to issue a remand pursuant to 42 U.S.C. §405(g).

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability"[2] pursuant to sections 216(i) and 223(d) of the Social Security Act between October 11, 2012, Plaintiff's alleged onset date, and August 14, 2016, the date of the ALJ's decision. (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. 22).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a).

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 21–22).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since October 11, 2012, his alleged onset date. (Tr. 13). At the second step, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease, obesity, history of hernia, affective disorder, and borderline intellectual functioning." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds; he can occasionally crouch and crawl; he can frequently climb ramps and stairs, balance, stoop, and kneel. Additionally, the claimant can occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights. Mentally, the claimant is able to understand, remember, and carry out simple, routine tasks involving simple work-related decisions, occasional independent judgment skills, and occasional workplace changes. Finally, the claimant can perform work with occasional interaction with the general public and occasional interaction with co-workers; and the claimant can respond appropriately to reasonable and customary supervision.

(Tr. 16–17). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 17). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 20–21). Finally, at the fifth and final step, the ALJ concluded that, after "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 21–22). Therefore, the ALJ determined that, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on January 18, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. 22).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence

supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the

outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

III. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred by failing to: (1) properly evaluate Plaintiff's intellectual disability when combined with his physical and mental impairments; (2) afford proper weight to Plaintiff's treating physician, Dr. Todd Davis; and (3) properly assess Plaintiff's vocational limits in light of his physical and mental impairments. (Doc. No. 12).

A. The ALJ Properly Evaluated Plaintiff's Alleged Intellectual Disability in Accordance with the Listings.

Plaintiff first argues that the ALJ erred when he found that Plaintiff did not met the requirements of Listing 12.05(C) for intellectual disorders. (Doc. No. 12 at 16). In order to meet Listing 12.05, a claimant must show:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.[3] Here, Plaintiff asserts that he meets the requirements of subsection C by producing IQ test results. (Doc. No. 18 at 17). Defendant, however, argues that Plaintiff failed to produce a *valid* IQ test.

Plaintiff carries the burden of satisfying Listing 12.05(C) and providing a valid IQ score. Henderson v. Colvin, 643 F. App'x 273, 275 (4th Cir. 2016). To support his argument, Plaintiff presents IQ test results from 1981 and 1982. (Tr. 291). As Defendant mentions, these scores come in the form of raw numeric values. (Id.). IQ tests displaying mere raw scores pose valid questions regarding validity, though. "[T]he results of intelligence tests are only part of the overall assessment [and] the narrative report ... should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Not only were Plaintiff's test results recorded when Plaintiff was 14 and 15 years old respectively,[4] no narrative report accompanies the results commenting on the results' validity or consistency with developmental history and the degree of functional limitation. The scores do not even show who administered the test.

---

[3] The Listings have since been subject to amendment. Therefore, the Court uses Listing 12.05 as it existed when the ALJ made his decision on August 14, 2015.

[4] Plaintiff was born in 1967. (Tr. 292).

In the end, it falls within the ALJ's discretion to assess the validity of an IQ test result, even if it is the only such test in the record. Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012). During step three of the sequential analysis, the ALJ stated,

> the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The evidence of record does not contain a valid IQ score of 60 through 70.

(Tr. 16). While the ALJ does not expound upon what invalidates the test in question further, it becomes clear on the face of the test what renders these scores invalid. Furthermore, Plaintiff fails to assert any argument that the ALJ's determination lacks substantial evidence. Rather, Plaintiff reasserts the IQ score as definitive proof that Plaintiff meets the requirements of Listing 12.05(C). (Doc. No. 12 at 16–17).

Because Plaintiff fails to show how the ALJ's step-three determination lacks substantial evidence, the Court finds that the ALJ properly determined that Plaintiff failed to meet the requirements of Listing 12.05. The record contains no valid IQ score to fulfill the requirements of 12.05(C).

B. The ALJ Properly Reduced the Weight Attributed to a Treating Physician's Opinion.

While objecting the ALJ's step-three determination, Plaintiff also argues that the ALJ erred by affording Plaintiff's treating physician's, Dr. Davis', opinion little weight. (Doc. No. 12 at 17). Defendant responds, arguing that the ALJ properly reduced the credibility of Dr. Davis' opinion after determining that it lacked supporting evidence within the record. (Doc. No. 14 at 9).

ALJ's must afford treating sources controlling weight if they "find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A non-exhaustive list guides courts when weighing medical opinions. Courts may ask: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Here, the ALJ acknowledged Dr. Davis' status as Plaintiff's treating physician of four years and recognized that he found Plaintiff limited, among other things, to an extremely low range of sedentary exertion. (Tr. 19). Ultimately, the ALJ afforded Dr. Davis' opinion little weight because his extreme perceived limitations were: (1) based too heavily upon Plaintiff's subjective statements; (2) inconsistent with Plaintiff's own testimony regarding his daily living activities; and (3) not supported by reliable evidence of the record. (Id.). The Court finds this explanation sufficient.

Despite Plaintiff's argument to the contrary, the ALJ's explanation is not "almost identical" to the insufficient reasoning analyzed in Switzer v. Colvin, No. 1:15CV212, 2016 WL 4182755 (W.D.N.C. July 5, 2016), report and recommendation adopted, No. 1:15-CV-00212-MR-DLH, 2016 WL 4203839 (W.D.N.C. Aug. 5, 2016). (Doc. No. 12 at 20). There exists obvious differences between the two cases. In Switzer, the ALJ summarily stated that the opinion of a Dr. Barnett deserved less weight. Id. at *4. In all, the ALJ stated, "Dr. Barnett's opinion was given some weight regarding her assessment of Tourret's syndrome; however, the limitations given are not supported by the record as a whole. Drs. Miller and Barnett appear to have based limitations upon the claimant's subjective complaints." Id.

Here, the ALJ went much further to explain the weight attributed to Dr. Davis' opinion:

> Such extreme limitations are based too heavily upon the claimant's subjective statements, and are given little weight. Further, such opinions are inconsistent with the claimant's own testimony and statements regarding his daily activities, which include cleaning, driving, and preparing his own meals. (Ex. 16F).
>
> Moreover, the reliable evidence of record does not support such an extreme range of sedentary exertion. For example, CT scans of the claimant's back and legs do not review foraminal or canal stenosis, and EMG nerve conductions studies revealed chronic irritation but no actual nerve injury. … Straight leg raise testing has been positive during multiple examinations, and lumbar spine x-rays revealed marked narrowing of disc spaces in the lumbar spine at multiple levels (consistent with reported fusion surgery). Additionally, an MRI of the lumbar spine in October of 2012 revealed grade three anterolisthesis at L5-S 1, with moderate to severe degenerative disc disease at L3-4, L4-5, and L5-Sl. Moderate to severe bilateral neural foraminal stenosis at L5-S 1 was also found. …

> However, during an examination in April of 2013, the claimant admitted he had been using a riding lawn mower, he had no sensory deficits in his lower extremities, he was able to stand on his heels and toes, and he was able to squat and arise. Moreover, he had no significant tenderness to palpation in his lumbar spine. … Additionally, the MRI from October of 2010 revealed no disc herniation or spinal canal stenosis.

(Tr. 19). The Court, therefore, cannot see how Switzer supports the proposition that the ALJ's reasoning was so lax as to warrant remand.

Plaintiff also asked the Court to review the holding in Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017). (Doc. No. 18). Plaintiff relies on language in that opinion that states, "Pursuant to relevant regulation, the ALJ was required to 'evaluate every medical opinion' presented to him '[r]egardless of its source.'" (Id.) (citing Brown, 873 F.3d at 271 and 20 C.F.R. § 404.1527(c)). This language, however, is simply inapposite to the situation before the Court. There, the Fourth Circuit commented on the ALJ's failure to even acknowledge the opinion of a pain management specialist. Brown, 873 F.3d at 271. That is why the Court stated that the ALJ had the duty to evaluate every medical opinion pursuant to 20 C.F.R. § 404.1527(c). Plaintiff fails to describe what evidence the ALJ failed to acknowledge.

As for Brown's application to Dr. Davis' opinion, the case only *confirms* the ALJ's decision to reduce the weight of a treating physician—so long as the ALJ supplies appropriate reasoning, that is. There the Court happened to conclude that the ALJ provided insufficient reasoning to rely on a non-treating source over several other treating sources. Id. ("[T]he ALJ erred by crediting Dr. Jonas and rejecting the opinions of Brown's treating and examining sources that, because of his chronic pain

and mental impairments, Brown could not persist through an eight-hour workday."). As discussed above, this simply is not the case the Court finds before it currently.

C. The ALJ Properly Calculated Plaintiff's RFC and Posed Proper Hypotheticals to the Vocational Expert.

Plaintiff's last argument assigns error to both the ALJ's hypothetical posed to the vocational expert ("VE") and his overall RFC analysis. First, Plaintiff believes that the ALJ's posed hypotheticals failed to capture Plaintiffs alleged intellectual incapacity in combination to his non-exertional functional and physical impairments. (Doc. No. 12 at 19). This error, Plaintiff asserts, leads to a conflict with the Dictionary of Occupational Titles ("DOT"). (Id. at 20).

Plaintiff again bases his argument on the assertion that the ALJ misjudged Plaintiff's intellectual abilities. As stated above, the absence of a valid IQ test prevented Plaintiff from meeting the requirements of the Listings for intellectual disorders. However, the ALJ's reasoning does not begin and end with the invalid IQ test. The ALJ also pointed to evidence mitigating Plaintiff's purported intellectual disability. First, the ALJ acknowledged Plaintiff's history of special education, but emphasized that Plaintiff earned his high school diploma nonetheless. (Tr. 18). Second, the ALJ points to Plaintiff's daily activities to combat both the existence of either a learning disorder or concentration problems. Plaintiff regularly played video games multiple hours a day and drove an automobile. (Id.). Third, the ALJ noted 2013 examinations performed by Dr. Robert Moore revealing that Plaintiff was alert and cooperative, demonstrated normal mood and affect, and had normal attention

span and normal concentration. (Tr. 18, 422). Fourth, the ALJ discredited the findings of Dr. Todd Morton, who found deficient to borderline-range intellectual ability. (Tr. 19–20). Although the record supported Dr. Morton's determination of Plaintiff's depression symptoms, the ALJ discredited his intellectual ability findings because Plaintiff had previously worked jobs requiring more than "relatively simple manual labor"—a limitation Dr. Morton prescribed. (Id. at 20). Again, the ALJ also emphasized Plaintiff's functional adaptations to drive, spend time playing video games, and manage his own funds. (Id.). These reasons validate the ALJ's determination that Plaintiff did not suffer from intellectual disabilities. As such, the ALJ's RFC and the hypotheticals posed the VE were appropriate.

Nor does the court find a conflict between the DOT and the jobs proposed by the VE and ALJ. Plaintiff takes issue with the fact that the jobs of bench assembler, final inspector, and garment bagger may include the need to abide by detailed instructions. (Doc. No. 12 at 20). However, this is a mischaracterization. The DOT for Bench Assembler, DOT 706.684-042, and Final Inspector, 727.687-054, include "detailed *but uninvolved* written or oral instructions." BENCH ASSEMBLER, DICOT 706.684-042; FINAL INSPECTOR, DICOT 727.687-054 (emphasis added). Such a requirement is consistent with the ALJ's RFC limiting Plaintiff to simple, routine tasks and simple, work related decisions. Lindsey v. Astrue, No. CA 9:10-1079-CMC, 2011 WL 2214779, at *4 (D.S.C. June 7, 2011) ("Even though his RFC limits Plaintiff to 'simple' instructions, this is generally consistent with the ability to carry out instructions that are 'detailed but uninvolved.'"). Furthermore, the job of

Garment Bagger, DOT 920.687-018, doesn't include a detailed instruction requirement that Plaintiff alleges. It merely requires "simple one- or two-step instructions." BAGGER, DICOT 920.687-018.

Finally, Plaintiff ends his last argument by citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). (Doc. No. 12 at 22). In doing so, Plaintiff seems to object to the ALJ's RFC determination which, in the face of Plaintiff's moderate difficulties in concentration, persistence or pace ("CPP"), limited Plaintiff to simple, routine tasks involving simple work-related decisions, occasional independent judgment skills, and occasional workplace changes. (Tr. 16).

In Mascio, the Fourth Circuit found that "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d at 638. Therefore, "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As such, limiting a claimant's RFC to simple, routine tasks or unskilled work does not alone address any moderate limitations in that claimant's CPP. An ALJ may still, however, assign claimants limitations to merely simple, routine tasks or unskilled work in the wake of a moderate CPP limitation. The ALJ must simply explain why further limitations in the RFC were not warranted. After all, Mascio simply stands for the proposition that, "when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the 'staying on task' aspect of CPP-related deficits … or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding 'staying on task.'" Grant v. Colvin, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016).

Here, as discussed above, the ALJ specifically mitigated Plaintiff's allegations of concentration difficulties while addressing his purported intellectual limitations. The ALJ pointed to examination records and Plaintiff's daily living activities, such as playing hours of computer games, driving a car, and managing his own funds. (Tr. 18, 20). The Court therefore finds that the ALJ supplied sufficient reasoning to excuse the absence of any limitation in the RFC that would directly address a moderate limitation in CPP.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's "Motion For Summary Judgment," (Doc. No. 12), is **DENIED**;

2. "Commissioner's Motion For Summary Judgment," (Doc. No. 14), is **GRANTED**;

3. The Clerk of Court is directed to close this case.

Signed: March 30, 2018

Robert J. Conrad, Jr.
United States District Judge